**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 14-20153-CIV-LENARD/GOODMAN**

KATHLEEN DAVANZO,

     Plaintiff,

v.

CARNIVAL CRUISE LINES, et al.,

     Defendants.

_____/

**ORDER ON DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S NOTICE OF**
**VIDEO-TAPING INDEPENDENT MEDICAL EXAMINATIONS**

*I don't need no doctor*[1]
*****************************************

     In this personal injury lawsuit against a cruise ship operator, Plaintiff Kathleen

Davanzo ("Davanzo") is being required to submit to a medical examination but seeks

certain conditions to apply during her compulsory physician visit.  Davanzo wants: (1)

to have her attorney and/or spouse attend the examination; and (2) to have a court

reporter attend and videotape the examination.  [*See* ECF No. 15].

---

[1]    Famously sung by Ray Charles, on "I Don't Need No Doctor" (1966 ABC) and also covered by, among others, Humble Pie (on its 1971 album "Performance Rockin' The Fillmore," A & M) and New Riders of the Purple Sage (on the 1971 album "Powerglide," Columbia).

The Court finds that the presence of an attorney and video equipment at a compulsory medical examination would be unwieldy, problematic, and unnecessary. Therefore, the Court **grants** in large part Defendant's Motion to Strike Plaintiff's Notice of Video-Taping Independent Medical Examinations. However, the Court also appreciates that the examination here is more akin to a *defense* examination and acknowledges Davanzo's desire to not become embroiled in a credibility contest at trial over what she did or did not say to Carnival's doctor regarding her medical history. In addition, the Court finds the presence of Davanzo's spouse at the examination to be acceptable. Therefore, the Court **denies in small part** the motion.

For the reasons outlined below, Davanzo's counsel will not be permitted to attend or videotape the compulsory medical examination and Davanzo will not be able to have a videographer attend either. However, Davanzo will be permitted to *audio record* the medical history portion of her examination. Davanzo must timely provide a copy of the audio recording to Carnival and Carnival must timely give Davanzo a copy of any written medical history or questionnaire she fills out in connection with the examination. Further, Davanzo's spouse may attend.

## I.     FACTUAL BACKGROUND

Davanzo claims she was injured in a slip and fall accident on Carnival's vessel. According to Davanzo, the fall caused injuries to her right hand, right shoulder, neck and back.  Carnival noticed Davanzo for compulsory medical examinations (pursuant

to Fed. R. Civ. P. 35) with a hand specialist and an orthopedic physician.  Davanzo does not challenge Carnival's request for an examination, but she does seek to have the examination occur under the specific conditions outlined above.

Carnival opposes the requested relief and argues that the conditions sought by Davanzo are not authorized by applicable law and would subvert the purpose of Rule 35.

## II.   DISCUSSION

### A.  Rule 35 Compulsory Medical Examinations: What is Really Happening

First, a word about semantics and what is actually happening here in this skirmish over the conditions surrounding Davanzo's examination:

Litigants, their attorneys, doctors, judges and others involved in an examination taken under Fed. R. Civ. P. 35 often use the term "independent medical examination" ("IME") when discussing a medical examination taken of a personal injury plaintiff at defendant's request.

But these examinations are generally performed by a defense-selected, defense-paid doctor, not a court-ordered independent expert. As Bob Dylan explained, "you don't need a weatherman to know which way the wind blows,"[2] and the Court finds that it is somewhat artificial and unrealistic to describe such an exam as an IME. Instead, it is more accurate to view the examination as a compulsory examination.

---

[2]   Bob Dylan, "Subterranean Homesick Blues," on *Bringing It All Back Home* (Columbia Records, 1965).

3

Indeed, Rule 35 does not use the term "independent medical examination," nor does it use the IME acronym. As such, the Court will describe Davanzo's medical examination as a compulsory examination, as opposed to an IME.

From a common sense perspective, Davanzo's compulsory examination is more akin to a litigant attending a deposition than a medical patient seeing his doctor. Like a litigant compelled to attend a deposition, Davanzo will be going to the doctor's office only because she *has to*. And like a litigant who will be required to give answers at a deposition, Davanzo's likely goal is to complete the chore as quickly as possible. Moreover, like a litigant required to give a deposition, Davanzo will likely be given advice to not volunteer information and to answer only the specific question asked. Finally, just like litigants who do not choose the attorney deposing them, Davanzo similarly will not be selecting the doctor examining her.

Comparing Davanzo to an *actual* medical patient generates additional reasons why the compulsory examination is inherently adversarial. A patient typically selects his or her doctor; Davanzo will not. Patients will often provide an expansive medical history and reveal intimate details about their health in order to obtain the best medical treatment. Litigants, like Davanzo, do not; they generally only provide the specific information asked. A patient seeking medical advice from a doctor expects the information to be confidential; Davanzo understands Carnival will obtain copies of the doctor's report.

Consequently, the Court considers it strained to view a compulsory examination as anything other than a procedure embedded in the fundamental adversarial nature of litigation. Therefore, the Court agrees with other federal courts which describe a Rule 35 compulsory examination to be "inextricably intertwined with the adversarial process." *Goggins v. State Farm Mut. Auto. Ins. Co.*, No. 3:10-cv-00826, 2011 WL 1660609 (M.D. Fla. May 3, 2011). *See also Gensbauer v. May Dept. Stores Co.*, 184 F.R.D. 552, 553 (E.D. Pa. 1999) (noting that, "in theory, an I.M.E. is to be scientific rather than adversarial, experience suggests that it is often the latter."); *Zabkowicz v. West Bend Co.*, 585 F. Supp. 635, 636 (D.C. Wis. 1984) ("the defendants' expert is being engaged to advance the interests of the defendants; clearly, the doctor cannot be considered a neutral in the case.").

### B.  Davanzo's Compulsory Examination

Framed by this pragmatic understanding, the Court will next address Davanzo's requests regarding her examination.

#### 1.   Applicable Law

##### a.    General Maritime Law

"[T]he substantive law applicable to this action, which involves an alleged tort committed aboard a ship sailing in navigable waters, is the general maritime law, the rules of which are developed by the federal courts." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989) (internal citations omitted). This fundamental rule

applies regardless of whether the Court's jurisdiction is diversity of citizenship or maritime jurisdiction. *Id.* at 1320-21.

Pinpointing general maritime law as the applicable substantive law does not resolve the issue here, though as there is no binding general maritime law on point. There seems to be no logical reason why procedures in a federal court case governing the compulsory examination of a plaintiff injured aboard a ship should not, in the absence of some atypical factor, be the same for an examination of a plaintiff injured on land. Therefore, given the absence of on-point binding general maritime law, the Court deems it appropriate to consider both non-binding federal maritime cases and federal diversity of citizenship cases for guidance.

### b. Fed. R. Civ. P. 35

Rule 35 is itself silent about who may attend a compulsory examination and about the procedures associated with the examination, leaving these issues to the Court's discretion. *Tarte v. United States*, 249 F.R.D. 856, 858 (S.D. Fla. 2008). The Court is aware of **non-binding** decisions under Rule 35 permitting the attendance of third persons[3] and those which prohibit them.[4]

---

[3] *Goggins*, 2011 WL 1660609, at *2-3 (permitting plaintiff's attorney to attend examination, but cautioning counsel to behave in an orderly fashion); *Tracey P. v. Sarasota Cnty.*, No. 8:05-CV-927-T-27EAJ, 2006 WL 1678908 (M.D. Fla. June 16, 2006) (not allowing counsel to attend compulsory examination, but allowing presence of court reporter or authorizing an audio recording of the examination); *Morton v. Haskell Co.*, No. 94-976-CIV-J20, 1995 WL 819182, at *3 (M.D. Fla. Sept. 12, 1995) (granting plaintiff's request to have one of his treating doctors or psychologists or psychiatrists present at

> 2.   <u>Davanzo's Counsel may not attend the Compulsory Examination and Davanzo may not Videotape the Compulsory Examination</u>

Notwithstanding well-established Florida law that a plaintiff "has a right to have a third party observer at his medical examination," *Bacallao v. Dauphin*, 963 So. 2d 962, 967 (Fla. 3d DCA 2007), the "majority view" in the federal district courts is to exclude third-parties and recording equipment from Rule 35 examinations. *See Holland v. U.S.*, 182 F.R.D. 493, 495 (D.S.C. 1998) (collecting cases).

There are strong policy reasons for prohibiting third-parties from attending examinations and barring the recording of examinations. If an attorney attends the examination, then he or she might be transformed into a fact witness. *Mantel*, 2009 WL 3247225, at *1. The "inclusion of a third party will contaminate the examination [and] influence an adversarial atmosphere." *Id*. The recording of the examination "would lend a degree of artificiality to the interview technique which would be inconsistent with applicable professional standards." *Holland* 182 F.R.D. at 495.

---

the mental examination). *Cf. Bennett v. White Labs., Inc.* 841 F. Supp. 1155, 1159 (M.D. Fla. 1993) (permitting plaintiff to have her own physician attend the examination); *Vreeland v. Ethan Allen, Inc.*, 151 F.R.D. 551, 552 (S.D.N.Y. 1993) (magistrate judge did not abuse discretion permitting plaintiff's attorney to attend plaintiff's compulsory psychological examination).

4    *Mantel v. Carnival Corp.*, No. 09-CV-20042, 2009 WL 3247225 (S.D. Fla. Oct. 9, 2009) (denying plaintiff's request that his attorney be allowed to attend and videotape the examination); *Tarte*, 249 F.R.D. at 859-60 (rejecting plaintiff's request that attorney attend the examination); *Holland v. U.S.*, 182 F.R.D. 493 (D.S.C. 1998) (rejecting request to record the examination and for attendance of plaintiff's counsel).

In addition, many courts adopt the view that a Rule 35 examination is designed to provide a "level playing field" between the parties in connection with their respective efforts to appraise the plaintiff's condition. *Favale v. Roman Catholic Diocese of Bridgeport*, 235 F.R.D. 553, 557 (D. Conn. 2006). Thus, because a plaintiff was examined by his doctors outside the presence of observers, the defendant should be afforded the same opportunity. *Id.*; *Tarte*, 249 F.R.D. at 859.

The Court agrees with all but one of these concerns: the stated goal to divest the examination of an adversarial atmosphere. As explained earlier, the Court considers a compulsory examination with a defense-selected and defense-paid doctor to be inherently adversarial to some extent. Therefore, it seems unrealistic to assume that the adversarial process can somehow be completely eliminated. Instead, the "examination is but a discovery/trial preparation tool that is part and parcel of the overall adversarial process," even if "the examiner does not intentionally set out to be an advocate for the party who is paying him." *Goggins*, 2011 WL 1660609, at *3. *See also Di Bari v. Incaica Cia Armadora, S.A.*, 126 F.R.D. 12, 14 (E.D.N.Y. 1989) (agreeing with plaintiff that a compulsory examination "is in reality adversarial in nature" and ruling that a court reporter could attend the examination but plaintiff's attorney could not); *Zabkowicz*, 585 F. Supp. at 636.

To be sure, the attendance of an attorney may well impede the doctor's ability to conduct a comprehensive, orderly examination and to ask all the questions he or she

might otherwise ask. Likewise, the presence of a videographer, court reporter, or other third-party could easily undermine the doctor's ability to comfortably conduct a physical examination. For similar reasons, the videotaping of the examination, even by Davanzo herself, could quickly hinder the doctor's ability to conduct and complete the examination and could also generate an awkward atmosphere, especially if the plaintiff were required to disrobe or engage in physical maneuvers or tests.

Accordingly, Davanzo's counsel may not attend the compulsory examination and Davanzo may not videotape the compulsory examination.

> 3. Davanzo May Audio Record Only the Oral Medical History of Her Compulsory Examination

The Court believes the better way to control arguably inappropriate questions or answers based on vague or confusing questions is for Davanzo to seek a ruling from the Court after the examination but before trial. In order to do this, however, **Davanzo must know with certainty what the doctor will say Davanzo said about her medical history.**

With a *written* survey or questionnaire filled out by Davanzo, this is easy -- a copy of the document will be the evidence of the information provided by Davanzo. But for the portion of the medical history which is done *orally*, Davanzo may not know the specifics of what the doctor will contend she said until the doctor's deposition is taken or until the doctor testifies at trial. More importantly, Davanzo could be in a dicey

credibility battle if she challenges the accuracy of the oral history attributed to her by Carnival's doctor.

Permitting Davanzo to **audio record only the oral medical history portion of the examination** would generate an accurate version of the oral medical history. And it is far less intrusive and distracting than permitting an attorney, a court reporter, a videographer, or another physician to attend the examination. In addition, any concern over the doctor's ability to accurately recall the oral medical history would require only the audiotaping of the initial medical history interview -- **not the entire examination**. *Sidari v. Orleans Cnty.*, 174 F.R.D. 275, 291 (W.D.N.Y. 1996) (rejecting defense argument "that the presence of a tape recorder would 'destroy any candor' by the plaintiff and subvert the entire purpose of the examination," and directing that mental examination be recorded by an audio tape recorder). *See also Zabkowicz*, 585 F. Supp. at 636 (ruling that the plaintiffs have the option of having a third party, including their counsel, attend the examination or to record the examination).

In other contexts, such as in criminal investigations or in interrogations involving hypnosis, the risks of not recording interviews and the benefits of preserving them have often been discussed by both courts and legal commentators. *See Rock v. Arkansas*, 483 U.S. 44, 60 (1987) ("tape or video recording of all interrogations, before, during and after hypnosis, can help reveal if leading questions were asked."); *United States v. Boston,* 249 F. App'x 807, 810, (11th Cir. 2007) (recording statements made during custodial

interrogations is not constitutionally required but "might be sound policy");[5] *see also* Thomas P. Sullivan, *Electronic Recording of Custodial Interrogations: Everybody Wins*, 95 J. Crim. L. & Criminology 1127 (2005).

To be sure, a compulsory examination in a civil lawsuit is different from a custodial police interrogation, but the critical desire to obtain an accurate, dispute-free version of what was said is applicable in both scenarios.

4.   Davanzo's Spouse May Attend the Examination

Although the Court finds that Davanzo may not have her attorney or a videographer present at the examination, she is permitted to have her spouse attend. Indeed, having her spouse present might reduce any anxiety involved over the examination and will not subvert the purpose of Rule 35.

## III.   CONCLUSION

For the reasons set forth above, the Court orders as follows:

i.   Davanzo's attorney may not attend Davanzo's compulsory examination.

ii.   Davanzo may not videotape or otherwise visually record the compulsory examination.

---

[5]   Although recording of custodial interrogations is not constitutionally required, some police departments have internal rules and guidelines mandating the procedure. *See, e.g., http://www.sheriff.org/posts/post.cfm?id=3436077b-3670-4e3f-bce8-c86148324009* (Broward County Sherriff's office news release explaining that the policy applies to all first and second-degree felonies) (last visited May 8, 2013).

iii.        Davanzo may audio record[6] the oral medical history of her compulsory examination taken by Carnival's doctor, assuming the doctor were to ask oral questions to supplement any written history he might obtain directly from Davanzo. If Davanzo chooses to audio record the oral medical history, then the following procedures will apply:

a.        Carnival must take steps to specifically advise the doctor of this Order and obtain the doctor's consent to examine Davanzo under the conditions set out in this Order. If the doctor is unwilling to examine Davanzo under these conditions (and the Court is certainly not requiring the doctor to do so), then Carnival shall make other arrangements to locate a doctor who is willing to conduct the examination under the terms of this Order.

b.        Carnival's doctor shall in his reasonable discretion determine when the oral medical history portion of the compulsory examination has concluded and advise Davanzo to at that point turn off the audio recording device. In the event there are inappropriate, vague, or confusing questions, or questions asked while the audio recording device is off, the Court will, upon request, address them before trial at the request of counsel who has filed an appropriate motion

---

[6]        There are many types of devices which could be used to record the oral medical history portion of the examination and the Court is not requiring or even suggesting which of the myriad available devices could or should be used.

12

   c. Davanzo must timely provide Carnival with her copy of the audio recording.

   d. Carnival must timely provide Davanzo with a copy of all questionnaires and surveys Davanzo fills out that are related to the compulsory examination.

  4. Davanzo's spouse may attend the compulsory examination.

  **DONE AND ORDERED** in Chambers, Miami, Florida, this 9th day of April 2014.

               _____

               Jonathan Goodman
               UNITED STATES MAGISTRATE JUDGE

<u>Copies furnished to</u>:
Honorable Joan A. Lenard
All Counsel of Record